**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | Chapter 7 |
| | : | |
| EBONY CLEMENTS, | : | |
| | : | Bky. No. 12-16595 ELF |
| Debtor. | : | |
| | : | |

# O P I N I O N

## I.  INTRODUCTION

Section 348(f) of the Bankruptcy Code provides that upon a good faith conversion of a

case from chapter 13 to chapter 7, property of the bankruptcy estate consists only of property of

the estate, as of the date of the bankruptcy filing, that is still possessed or controlled by the

debtor, i.e., only those property interests of the debtor that existed when the case was commenced

that are part of the bankruptcy estate under 11 U.S.C. §541 that have not already been distributed

to creditors.  See 11 U.S.C. §348(f)(1)(A), (f)(2).  Last year, in In re Michael, 699 F.3d 305 (3d

Cir. 2012), the Court of Appeals considered the question whether, upon conversion of a chapter

13 case to chapter 7, **after confirmation of a chapter 13 plan**, the undistributed plan payments

derived from the debtor's post-petition assets still held by the trustee should be returned to the

debtor pursuant to §348(f)(1), or whether they should be distributed to creditors under the

provisions of the plan that was confirmed prior to the conversion of the case.  After observing

that the Bankruptcy Code "provide[s] no clear answer to this question [and that] in reading it one

finds an internal tension, as separate provisions seemingly lead to divergent results," id. at 308,

the panel majority[1] held that 11 U.S.C. §348(f)(1) requires that the undistributed plan payments

derived from the debtor's post-petition assets be returned to the debtor.

This case presents a similar, but distinct question: whether, upon conversion of a chapter

13 case **prior to confirmation of a chapter 13 plan**, the undistributed plan payments derived

from the debtor's post-petition assets should be returned to the debtor, or whether they should be

distributed first on account of allowable chapter 13 administrative expenses.  In this case, the

Debtor's chapter 13 counsel contends that, notwithstanding §348(f)(1), the third sentence of 11

U.S.C. §1326(a)(2) mandates that its professional compensation, allowable under 11 U.S.C.

§503(b) and §330(a)(4), should be deducted from the funds held by the trustee before the balance

of the money is returned to the Debtor.

As explained below, while the case is presented to the court as one which requires a

resolution of the tension between §348(f)(1) and §1326(a)(2), I conclude that §1326(a)(2) is not

applicable because no order denying confirmation of the plan was entered in this case prior to its

conversion from chapter 13 to chapter 7.  As a result, §348(f)(1) controls the disposition of the

undistributed plan payments and, as in <u>Michael</u>, requires that the payments be returned to the

Debtor.

## II.  BACKGROUND

Debtor Ebony Clements ("the Debtor") filed a chapter 13 bankruptcy petition on July 12,

2012.  Throughout the case, she has been represented by Basso & Chambers, LLC ("B&C").

---

[1]    <u>Michael</u> was a 2-1 decision, with Judges Ambro and Sloviter in the majority and Judge
Roth dissenting.

On November 26, 2012, the Debtor filed an amended chapter 13 plan ("the Plan").  (Doc. # 14).  The Plan required her to pay the Chapter 13 Trustee $499.00 per month for five (5) months, then $518.00 per month for fifty-five (55) months.  While in chapter 13, the Debtor paid the Chapter 13 Trustee a total of $1,750.00.

On November 26, 2012, B&C filed an Application for Compensation and Reimbursement of Expenses ("the Application") (Doc. # 15).  In the Application, B&C requested compensation of $2,889.00 and reimbursement of $40.00 in expenses.  B&C disclosed that it had received $389.00 from the Debtor prior to the filing of the bankruptcy petition, leaving a balance of $2,500.00 to be paid by the Chapter 13 Trustee.

The Plan was never confirmed by the court.  Instead, on February 5, 2013, the Debtor filed what she styled as an "Application Under 11 U.S.C. §1307(a) to Convert a Case Under Chapter 13 to a Case Under Chapter 7."  (Doc. # 28).  The court entered an order on February 8, 2013 which stated that it is "unnecessary to file an application or a motion to convert a case from chapter 13 to chapter 7 pursuant to 11 U.S.C. § 1307(a), see Fed. R. Bankr. P. 1017(f)(3)," and ordered that the application "be treated as a Notice of Conversion."  (Doc. # 31).

After the entry of the court's February 8, 2013 order, the case proceeded under chapter 7. The U.S. Trustee appointed an interim chapter 7 trustee ("the Chapter 7 Trustee").  The Clerk scheduled a meeting of creditors pursuant to 11 U.S.C. §341 and set May 19, 2013 as the deadline for the filing of objections to discharge and complaints to determine the dischargeability of a debt.  The Chapter 7 Trustee conducted the §341 meeting of creditors, and on March 22, 2013,  filed a "no-asset report."  (Unnumbered Docket Entry dated March 22, 2013).

The Chapter 13 Trustee has retained $1,750.00 that the Debtor paid prior to the

conversion of the case, pending further direction from the court.  Notwithstanding the conversion

of the case to chapter 7, B&C asserts that the court should rule on the pending Application and

direct the Chapter 13 Trustee to pay B&C the amounts allowed as compensation and for

reimbursement of expenses.

On February 28, 2013, the court entered an order requiring B&C to file a memorandum of

law in support of its position.  (Doc. # 39).  The order also required that the memorandum be

served on the Debtor, the Chapter 13 Trustee and the Chapter 7 Trustee in order to provide each

of them with an opportunity to file an opposing memorandum.  B&C filed its memorandum on

March 15, 2013.  None of the other parties responded.  No party in interest requested an

evidentiary hearing.

# III.  DISCUSSION

In <u>Michael</u>, the Court of Appeals discussed, in some detail, the relevant Code provisions

relating to the disposition of chapter 13 plan payments.  Therefore, I will truncate my discussion

of the subject and describe briefly the key statutory provisions.  Like the Court of Appeals, I will

begin with 11 U.S.C. §348(f)(1).

## A.  11 U.S.C. §348(f)(1)

### 1.

Section §348(f)(1)(A) provides:

> property of the estate in the converted case shall consist of property of the estate,
> **as of the date of filing of the petition**, that remains in the possession of or is
> under the control of the debtor on the date of conversion.

(emphasis added).

In order to understand the effect of §348(f)(1), it is necessary to consider 11 U.S.C. §541, the Code provision that defines "property of the estate."

Section 541 of the Bankruptcy Code broadly defines property of the estate as "all legal and equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. §541(a)(1), but specifically excludes "earnings from services performed by an individual debtor after the commencement of the case," 11 U.S.C. §541(a)(6).  The temporal limitation, "after the commencement of the case" is a key aspect of this definition.  Under the general definition in §541(a), but subject to some qualifications and exceptions, the assets acquired by a debtor post-petition are not included in the bankruptcy estate (and therefore, are not potentially subject to liquidation for the benefit of creditors).[2]

In a chapter 13 case, §541(a) is supplemented by §1306(a), which expands the scope of the bankruptcy estate in two (2) significant ways.  First, the temporal restriction, "as of the commencement of the case," does not exist; all property of the kind specified in §541 that a chapter 13 debtor acquires post-petition is property of the bankruptcy estate.  Second, the debtor's post-petition earnings derived from personal services (excluded from the general definition of estate property by §541(a)(6)), are included as property of the estate.  See 11 U.S.C. §1306(a).

---

[2]       Excepted from the general rule are assets acquired by the debtor by bequest, devise, inheritance, marital settlement agreements or as the beneficiary of a life insurance policy or a death benefit plan are treated as property of the estate if acquired by the debtor within 180 days of the filing of the bankruptcy petition.  Also, certain other assets, not owned or possessed by the debtor as of the commencement of the case may become estate assets as a result of post-petition events.  See 11 U.S.C. §541(a)(3) - (4), (6) - (7).

Conversion of a case from chapter 13 to chapter 7 effects, by operation of law, a material change in the scope of the bankruptcy estate.  Section 348(f)(1)(A) provides that, in a case converted from chapter 13, property of the bankruptcy estate "shall consist of property of the estate, as of the date of the filing of the petition" still under the debtor's control on the date of conversion.  Thus, upon conversion of a case from chapter 13 to chapter 7, in the absence of bad faith,[3] estate property is retroactively limited to property of the estate **as of the bankruptcy filing date** that is still possessed or controlled by the debtor, i.e., only those property interests of the debtor that existed when the case was commenced.  As a result, "property acquired post-petition that is in the Chapter 13 estate at the time of conversion is not property of the new Chapter 7 estate." Michael, 699 F.3d at 313.[4]

In effect, because all (or at least most)[5] of the debtor's property interests as of the commencement of a chapter 13 bankruptcy case flow into the bankruptcy estate pursuant to §541(a), and because §1306 keeps the faucet open so that the assets acquired by the debtor post-petition (including post-petition earnings) continue to flow into the bankruptcy estate,

---

[3]        Section 348(f)(1) includes one qualification.  The contours of the bankruptcy estate are determined as of the date of conversion, rather than retroactively to the petition date, if the court determines that the conversion of the case was "in bad faith." See §348(f)(2).  In the present case, no party in interest has suggested that the conversion was in bad faith.

[4]        Subsection (f)(1)(A) was added to 11 U.S.C. §348 in 1994. See Pub. L. No. 103-394, §311.  Prior to its enactment, the case law was divided on the question whether chapter 13 plan payments derived from post-petition earnings remained in the bankruptcy estate after conversion of a chapter 13 case to chapter 7. See, e.g., In re Bullock, 41 B.R. 637, 640-41 (Bankr. E.D. Pa. 1984) (citing cases).

[5]        Various types of assets that fall within the broad definition of property of the estate under §541(a) are categorically excluded from the estate under §541(b).

§348(f)(1)(A) not only closes the faucet upon conversion to chapter 7, but does so retroactively,

with the bankruptcy estate being treated as if it had always been a chapter 7 case.  See Michael,

699 F.3d at 310 ("the order converting the case is effectively backdated to the time of the order

for relief under Chapter 13, which is the date of the filing of the Chapter 13 petition"); Bullock,

41 B.R. at 640 ("on conversion of a case from chapter 13 to chapter 7 the case is deemed

commenced as of the date of the original petition as a chapter 7 proceeding and consequently, the

chapter 13 estate, as defined by § 1306, is deemed never to have existed").[6]

     In most cases converted from chapter 13 to chapter 7, the undistributed plan payments

held by the chapter 13 trustee do not flow into the chapter 7 estate upon conversion as a result of

348(f)(1)(A).  This is because, usually, the source of the debtor's payments to the chapter 13

trustee is the debtor's post-petition earnings and such earnings are not property of the estate by

virtue of §541(a)(6).[7]

     In Michael, the court explained that the fundamental policy behind §348(f)(1) is to

encourage the use of chapter 13.  A debtor filing under chapter 13 typically proposes to use his or

her post-petition assets to pay creditors    assets the creditors would have no right to receive in a

chapter 7 case.  If the debtor is unable to complete a confirmed chapter 13 plan, payment of

---

[6]    The Bullock decision preceded the enactment of §348(f)(1).  One might say that §348(f)(1)(A) codified its reasoning and outcome.

[7]    Certainly, there are cases in which this will not be true.  If, for example, the source of the debtor's chapter 13 plan payments prior to conversion were rents from real property owned by the debtor, the funds held by the trustee may well be included in the chapter 7 bankruptcy estate after conversion. See 11 U.S.C. §541(a)(6) (bankruptcy estate includes "rents  .  .  .  from property of the estate"). Similarly, if the payments were made from the debtor's savings on hand when the case was commenced rather than from wages earned post-petition, the undistributed plan payments would be included in the chapter 7 estate after conversion.

undistributed plan payments (derived from the debtor's post-petition assets) by the chapter 13
trustee would result in creditors receiving property of the debtor from the chapter 13 trustee that
they would not be entitled to receive in distribution from the chapter 7 trustee.  Such an outcome
is perceived as potentially dissuading debtors from electing to file under chapter 13.  See
Michael, 699 F.3d at 315 (citing In re Bobroff, 766 F.2d 797 803 (3d Cir. 1985)); see generally In
re Williams, 488 B.R. 380, 386-87 (Bankr. N.D. Ill. 2013) (discussing similar policy concerns
under 11 U.S.C. §349(b)(3) upon dismissal of chapter 13 case after confirmation).


                                             **2.**

        In this case, the Debtor disclosed in Schedule I that her income was derived from her
employment as a claims examiner with the Veterans Benefits Administration.  (Doc. # 1).  It is
fair to infer that her chapter 13 plan payments were derived, more likely than not, from
post-petition earnings that are not included in the chapter 7 estate after conversion.  B&C does
not suggest otherwise.  Further, the chapter 7 trustee appears to have reached the same
conclusion, having filed a report stating that there are no assets to administer.[8]  Thus, pursuant to
§348(f)(1)(A), all of the funds held by the Chapter 13 Trustee were derived from the Debtor's
post-petition earnings and were no longer property of the bankruptcy estate upon conversion of

------

        [8]       Theoretically, it is also possible that the chapter 7 trustee believed that the undistributed
plan payments were part of the chapter 7 estate but decided not to administer them because they were of
inconsequential value or because the debtor could exempt them.  However, in light of the information in
the Debtor's schedules, this is unlikely.

the case to chapter 7.[9]

### 3.

As the <u>Michael</u> court held, albeit in the context of a post-confirmation conversion of a chapter 13 case to chapter 7, §348(f)(1)(A) instructs that, absent bad faith, the undistributed plan payments derived from a debtor's post-petition assets are not property of the chapter 7 estate following the conversion.  In this case, with good faith not at issue, application of §348(f)(1) would result in a determination that the undistributed plan payments derived from the Debtor's post-petition assets belong to the Debtor.

B&C contends, however, that the third sentence of 11 U.S.C. §1326(a)(2) compels a different outcome.  According to B&C, that provision is an expression of Congress' intent to surcharge the debtor's property to pay chapter 13 administrative expenses when a case is dismissed prior to confirmation, notwithstanding the general application of §348(f)(1).  <u>See generally</u> <u>Michael</u>, 699 F.3d at 313 n.6 (stating general principle that "the specific provisions of Chapter 13 supersede" the "broad provisions" of chapter 3, such as §§348 and 349).

### B.  11 U.S.C. §1326(a)(2)

### 1.

Section 1326(a), which is titled "Payments," provides:

---

[9]        Consequently, this case does not require a determination regarding the proper disposition of undistributed plan payments after conversion of a case in which the undistributed plan payments, in whole or in part, become part of the chapter 7 bankruptcy estate pursuant to §348(f)(1).  That determination may require consideration of §348(f)(1), §726(b), Fed. R. Bankr. P. 1019(4) and, perhaps, §1326(a)(2).

      (1)      Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount

           (A)   proposed by the plan to the trustee;

                \*      \*      \*

      (2)      A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable. If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, **after deducting any unpaid claim allowed under section 503(b)**.

(emphasis added).[10]

      Section 1326(a)(2) consists of three (3) sentences that address the trustee's duties, both before and after the confirmation decision, with respect to the plan payments made by the debtor pre-confirmation.[11]

---

[10]     Section 1326(a)(2) was added to the Bankruptcy Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353 (1984).

[11]     Section 1326(a)(2) does not address the disposition of any plan payments the chapter 13 trustee receives from the debtor **after confirmation** of the plan. See In re Tran, 309 B.R. 330, 336 (B.A.P. 9th Cir. 2004), aff'd, 177 F. App'x. 754 (9th Cir. 2006); In re Hamilton, 2013 WL 2151457, at \*3 (Bankr. M.D. Tenn. May 16, 2013) (per Lundin, J.); Williams, 488 B.R. at 385; In re Parker, 400 B.R. 55, 62 (Bankr. E.D. Pa. 2009) (per Fox, J.). After confirmation, the chapter 13 trustee's obligations with respect to the plan payments are grounded in the confirmation order, the terms of the confirmed plan, and perhaps, §1326(c). Section 1326(c) states: "Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan." Thus, on its face, 11 U.S.C. §1326(c) appears to address the trustee's post-confirmation obligation. The Michael court seemed to read §1326(c) in this manner. 699 F.3d at 309 n.4 & at 317 ("the trustee, pursuant to § 1326(c), shall pay out the funds to the creditors as provided for in the confirmed plan"); accord In re Stevens, 130 F.3d 1027, 1031 (11th Cir. 1997).

     I note that some reported cases and two (2) leading treatises seem to imply, that §1326(c) may have nothing to do with the trustee's duties, but rather, the purpose of this provision is to permit the debtor, rather than the trustee, to serve as the disbursing agent under the plan. See Williams, 488 B.R. at
(continued...)

The first sentence of §1326(a)(2) instructs that the chapter 13 plan payments be "retained

by the trustee **until confirmation or denial of confirmation**" of the debtor's plan.  (emphasis

added).

Both the second and third sentences of §1326(a)(2) address the disposition of the

undistributed plan payments at the confirmation phase of the case.  The second sentence of

§1326(a)(2) instructs that "**[i]f a plan is confirmed**"[12] (emphasis added), the trustee shall

distribute the plan payments in accordance with the confirmed plan.  The third sentence of

§1326(a)(2) provides that "**[i]f a plan is not confirmed**," the undistributed, pre-confirmation

plan payments shall be returned to the debtor, subject to two (2) deductions.

In this case, B&C asserts that the third sentence is applicable and that the relevant

"deduction" is for "any unpaid claim allowed under section 503(b)."  Section 503(b) provides for

the allowance of "administrative expenses,"[13] which includes compensation allowed to the

---

[11](...continued)
385 (citing In re Nash, 765 F.2d 1410, 1413 n.1 (9th Cir. 1985)); 8 Collier on Bankruptcy ¶ 1326.04 (Alan
N. Resnick, Henry J. Sommer eds., 16th ed. 2012) ("Collier"); Keith M. Lundin & William H. Brown,
Chapter 13 Bankruptcy §§59.1, 454.2 (4th ed. 2013) (www.Ch13online.com) ("Lundin & Brown").

[12]       I will further discuss the phrase "if a plan is confirmed" in Part III.C, infra, because it is
susceptible to two (2) potential interpretations and that choice affects the disposition of this matter.

[13]       The other deduction is for amounts due to creditors under 11 U.S.C. §1326(a)(3).
Section 1326(a)(3) may refer to payments the debtor is required to pay to lessors of personal property and
to provide adequate protection to creditors secured by personal property.  See 11 U.S.C. §1326(a)(1)(B)
and (C); 8 Collier ¶1326.02[3].  Thus, if a debtor fails to make such payments, the third sentence of
§1326(a)(2) arguably provides that the chapter 13 trustee should deduct those unpaid amounts from the
undistributed plan payments before returning the balance to the debtor.  But see Lundin & Brown
§402.1[4]-[6] (suggesting that the reference in the third sentence of §1326(a)(2) is unclear and may not
refer to adequate protection payments referenced in §1326(a)(1)(B) and (C)).  This issue does not arise in
this case.

(continued...)

debtor's counsel in chapter 13 cases.[14]  Thus, when the third sentence of §1326(a)(2) applies,

compensation allowed to the debtor's counsel is to be deducted from the undistributed plan

payments before the remaining funds are returned to the debtor.

One purpose of the third sentence of §1326(a)(2) is to encourage the use of chapter 13 by

returning to the debtor post-petition assets that were devoted to the ultimately unsuccessful,

unconfirmed chapter 13 plan, since those assets would not have been part of a chapter 7

bankruptcy estate on the date of filing.  See Smith v. Strickland, 178 B.R. 524, 527 (M.D. Fla.

1995); accord, In re Bailey, 330 B.R. 775, 775 -76 (Bankr. D. Or. 2005); In re Walter, 199 B.R.

390, 392 (Bankr. C.D. Ill. 1996).  In this respect, §1326(a)(2) corresponds to §348(f)(1).

Another purpose, however, expressed in the mandatory deduction of allowed

administrative expenses from the monies to be returned to the debtor, is to shift some of the risk

of the failure of the case from administrative claimants to the debtor.  See In re Barbee, 82 B.R.

470, 473 (Bankr. N.D. Ill. 1988).

---

[13](...continued)
Throughout the balance of this opinion, for ease of reference, I will refer only to the
administrative expense exception.  By doing so, I do not intend to imply that the §1326(a)(3) exception to
the trustee's duty to return undistributed plan payments to the debtor under the third sentence of
§1326(a)(2) should be treated any differently than the §503(b) exception.

[14]     11 U.S.C. §503(b) provides for the allowance as an administrative expense of, inter alia,
"compensation and reimbursement awarded under section 330(a)."  Section 330(a)(4)(B) provides that in
a chapter 13 case the court may allow reasonable compensation to the debtor's attorney for representing
the interests of the debtor in the bankruptcy case.

-12-

**2.**

The key question that arises    an aspect of the statutory "tension" identified in <u>Michael</u>

is how the third sentence of §1326(a)(2) interacts with §348(f)(1).  Does §1326(a)(2) serve to

carve out the amounts payable for administrative expenses before §348(f)(1) operates to revest

plan payments derived from post-petition assets in the debtor upon conversion to chapter 7?

Restating the question, when the third sentence of §1326(a)(2) is applicable, does its instruction,

that allowed administrative expenses be deducted from the fund before the undistributed plan

payments are returned to the debtor, constitute a "statutory vesting" of an interest in the

undistributed plan payments in favor of the administrative claimants that occurs prior to the

revesting of the property in the debtor pursuant to §348(f)(1)?

B&C contends that the answer to these questions is "yes."  There is authority for B&C's

position.  <u>See, e.g.</u>, <u>In re Hampton</u>, 563-64 (Bankr. S.D. Ga. 2008); <u>Smith</u>, 178 B.R. at 526  27;

<u>see generally</u> <u>Parker</u>, 400 B.R. at 62 (interpreting the second sentence of §1326(a)(2) as vesting

in creditors a right to payment under the plan of those plan payments made by the debtor prior to

confirmation).[15]

---

[15]    Certain passages in <u>Michael</u> also can be read to support B&C's position, while other
passages tend to support the contrary result.

At one point in the opinion, the panel majority juxtaposed §§348 and 349 with
§1326(a)(2) and stated:

> Sections 348 and 349 are broad provisions applicable to every Chapter of the
> Bankruptcy Code. The specific provisions of Chapter 13 supersede any
> distinction that may be read into these proceeding general provisions.

699 F.3d at 314 n.6.  The import of footnote 6 is that the trustee's duty to deduct administrative expenses
from the undistributed plan payments when a plan is not confirmed, pursuant to the third sentence of
§1326(a)(2), "supersedes" the debtor's right to the return of the non-estate property under §348(f)(1).

(continued...)

However, the unstated premise of B&C's argument is that the third sentence of

§1326(a)(2) applies in any case that has been converted, including a case, such as this one, in

which no order denying confirmation of the debtor's plan was entered before the conversion of

the case.  Because I find that premise erroneous, I conclude that §1326(a)(2) does not apply in

this case, leaving §348(f)(1) as the only operative Code provision.


### C.  The Scope of the Third Sentence of §1326(a)(2)

The determinative statutory interpretation question in this case is: does the phrase in the

---

[15](...continued)
Similarly, in footnote 7, the panel majority stated, without qualification, that "[i]n the pre-confirmation context, the trustee is obligated to pay allowed administrative expenses from accumulated payments he is holding."  Michael, 699 F.3d at 314 n.7.  In support of this proposition, the court cited §1326(a)(2).

On the other hand, the ratio decidendi of the decision was that a creditor's right to payment under a confirmed plan does not vest against the plan payments themselves until the payments are actually delivered; hence, a creditor has no vested rights in the undistributed plan payments in the possession of the chapter 13 trustee:

**[N]o provision in the Bankruptcy Code classifies any property, including post-petition wages, as belonging to creditors**. Rather, property comes into and flows out of the estate. . . . Though creditors have a right to those payments based on the confirmed plan, the debtor does not lose his vested interest until the trustee affirmatively transfers the funds to creditors. Also, **§§1326(a)(2) and (c) only address the obligation of the trustee to distribute payments in accordance with a confirmed plan; they do not vest creditors with any property rights**.

699 F.3d at 312-313 (emphasis added).

If the second sentence of §1326(a)(2) and (possibly) §1326(c), see n.11, supra, which direct the trustee to distribute plan payments in accordance with the plan, do not vest creditors with any rights in the plan payments held by the trustee, is the result any different under the third sentence of §1326(a)(2)?  Is there a difference between a statutory provision that instructs the trustee to make payments pursuant to the terms of a chapter 13 plan and a provision that instructs the trustee to deduct money for payment of allowed administrative expenses?  Perhaps, but if so, the Michael court does not explain the distinction.  This silence is understandable considering that the relationship between the third sentence of §1326(a)(2) and §348(f)(1) was not before the court.  See also Part III.D., infra.

-14-

third sentence of §1326(a)(2), "if a plan is confirmed," have a narrow meaning, in which it

applies only if confirmation of a plan has been formally denied by the bankruptcy court; or does

it have a more expansive meaning, in which it applies any time a chapter 13 case will not result

in confirmation, including the dismissal of the case or the conversion of the case to another

chapter?[16]

     Based on a textual analysis of the three sentences in §1326(a)(2), I conclude that the

narrow interpretation is correct    the term "not confirmed" in the third sentence was intended to

mean "denial of confirmation."[17]

---

[16]    This issue regarding the scope of the third sentence of §1326(a)(2) would not have arisen
had Congress either: (a) used the phrase "if confirmation is denied," rather than "if a plan is not
confirmed;" or (b) included additional wording, such as "[i]f a plan is not confirmed for any reason,
including the conversion or dismissal of the case."

[17]    Several years ago, in In re Lewis, 346 B.R. 89 (Bankr. E.D. Pa. 2006), I had occasion to
consider the effect of the third sentence of §1326(a)(2) in the context of a chapter 13 case that was
dismissed prior to confirmation. The "general" provision of the Code addressing the effect of a dismissal
of a case is 11 U.S.C. §349.

    In Lewis, no order was entered denying confirmation before the entry of the dismissal
order. Consequently, I discussed various arguments in favor of each interpretation of the statute. 346
B.R. at 105-11. In particular, I considered the possibility that the absence of parallelism between the first
sentence ("denial of confirmation") and the third sentence (if a plan is "not confirmed") expressed an
intent that the third sentence be "more expansive" in scope, id. at 106, as well as contrary arguments in
favor of the narrower interpretation.

    In the end, the actual, narrow holding in Lewis was that the third sentence of §1326(a)(2)
did not apply in a case that was dismissed prior to confirmation without the entry of an order denying
confirmation of the debtor's chapter 13 plan and the consequences of confirmation were determined by
§349(c) – a provision, like §348(f)(1), found in chapter 3 of the Code. See 346 B.R. at 111. However, I
did not reach that result by expressly endorsing the narrow interpretation of §1326(a)(2), as I do today.
Rather, I concluded that the tension between the third sentence of §1326(a)(2) (if applicable) and
§349(c)(3) could be harmonized based on the broad discretion afforded the court under §349(c)(3) to
modify the effect that dismissal has on the bankruptcy estate (discretion that is absent from §348(f)(1)),
– with §349(c)(3) serving as the statutory vehicle for the implementation of §1326(a)(2)'s policy
favoring the payment of administrative expenses from undistributed, pre-confirmation plan payments.

    (continued...)

The subject matter of §1326(a)(2) is the disposition of the plan payments held by the chapter 13 trustee.  The first sentence addresses the chapter 13 trustee's duties with respect to plan payments received from the debtor and identifies a universe of three (3) scenarios:

> (1) pre-confirmation duties;
>
> (2) duties upon entry of an order confirming the debtor's chapter 13 plan; and
>
> (3) duties upon entry of an order denying confirmation of the debtor's chapter 13 plan.

In light of the framework set out in the first sentence, which addresses the trustee's pre-confirmation duty (and stating that the duty is to retain the payments), the second and third sentences of §1326(a)(2) are read most naturally to address the second and third scenarios described in the first sentence.  The second sentence clearly does so, using the same phrase as in the first sentence   "[i]f a plan is confirmed"   as triggering the trustee's obligation to distribute plan payments "in accordance with the plan."

The third sentence employs different wording from the first sentence, in that it uses the more general phrase "[i]f a plan is not confirmed," rather than the words "denial of confirmation."  Nevertheless, given the context and the structure of the entire subsection, it makes more sense to read the third sentence to "close the circle" on the scenarios identified in the first sentence by setting forth the consequences of the denial of confirmation.  Thus, when read in context, the third sentence of §1326(a)(2) does not concern the consequences of a conversion of the chapter 13 case.  It addresses only the situation in which the court has denied confirmation of the debtor's chapter 13 plan.  Any right that chapter 13 administrative claimants may have to

---

[17](...continued)

surcharge the undistributed plan payments under the third sentence of §1326(a)(2) does not arise

in a case that is converted to chapter 7 without the prior entry of an order denying confirmation.[18]

The foregoing interpretation of the statute is supported by the principle of statutory

interpretation known as noscitur a sociis, which instructs that "when two or more words are

grouped together, and ordinarily have a similar meaning, but are not equally comprehensive, the

general word will be limited and qualified by the special word."  Norman J. Singer & J.D.

Shambie Singer, 2A Sutherland Statutes and Statutory Construction §47:16 (West 7th ed. 2013);

see also Bullock v. BankChampaign, N.A., 133 S. Ct. 1754, 1760 (2013) (applying the maxim in

interpreting 11 U.S.C. §523(a)(4)).  Application of that principle supports the interpretation that

the more general phrase "[i]f a plan is not confirmed" refers to the specific subject referenced in

the first sentence, earlier in the subsection, "denial of confirmation."

In this case, the court did not deny confirmation of the Debtor's chapter 13 plan; the

Debtor converted the case to chapter 7 before any ruling on the confirmation of her chapter 13

plan.  It follows that the third sentence of §1326(a)(2) is inapplicable, leaving §348(f)(1) as the

sole statutory provision that addresses the effect of conversion of the case from chapter 13 to

chapter 7.  Consequently, this case does not require that I determine the effect, if any, of the third

sentence of §1326(a)(2) following the conversion of a case to chapter 7.[19]

---

[18]       The third sentence of §1326(a)(2) could come into play if confirmation is denied and the
case is thereafter converted to chapter 7, as occurred in Hampton.  See 383 B.R. at 561.  But that did not
occur in this case.

[19]       I am cognizant that the narrow construction I have given to the third sentence of
§1326(a)(2), and the outcome here, could be critiqued as creating a mere formalistic distinction devoid of
purpose.

(continued...)

### D.  The __Michael__ Opinion

Before concluding, I return briefly to the __Michael__ opinion.

As stated earlier, the dictum in the opinion might be read to be contrary to my ruling in

this matter.  See n.15, supra.  In particular, in footnote 7, the panel majority stated, without

qualification, that "[i]n the pre-confirmation context, the trustee is obligated to pay allowed

administrative expenses from accumulated payments he is holding," citing §1326(a)(2) for that

proposition.  699 F.3d at 314 n.7.

### 1.

Initially, there is no question that the commentary in footnote 7 is dictum.

The issue in __Michael__ was whether, after a good faith conversion of a chapter 13 case to

chapter 7 after the confirmation of the debtor's chapter 13 plan, the undistributed payments held

---

[19](...continued)

As I have interpreted the statute, the third sentence of §1326(a)(2) does not come into play solely by virtue of a conversion (or dismissal) of the case.  That leaves the provision applying only in the scenario in which confirmation is denied and the case continues to proceed in chapter 13 while the debtor attempts, with leave of court, to propose and confirm another plan.  One might then ask: why there is a need for the return of the undistributed plan payments (minus deduction of administrative expenses – usually for professional fees), in such a case?  Certainly, that is not what happens "in the trenches" after the denial of confirmation, with the debtors preferring to leave their plan payments intact and in the possession of the chapter 13 trustee while they attempt to formulate a confirmable amended plan.  Arguably, this outcome leaves the provision with no meaningful purpose whereas the more expansive interpretation serves one of the purposes of the third sentence of §1326(a)(2) by compensating the debtor's counsel for assisting the debtor in the chapter 13 rehabilitation effort, even though it proved unsuccessful.

I note further, however, that to the extent that the narrow interpretation of the scope of the third sentence of §1326(a)(2) is perceived to lead to an unsatisfactory result, the debtor and counsel usually will be in a position to remedy the problem.  If the debtor and counsel prefer that the third sentence of §1326(a)(2) apply in a case to be converted from chapter 13 chapter 7, in most cases, they should be able to time the conversion to post-date the entry of an order denying confirmation.

by the chapter 13 trustee, derived from the debtor's post-petition property, should be distributed to creditors pursuant to the confirmed plan or returned to the debtor pursuant to 11 U.S.C. §348(f)(1).  In Michael, the argument that the undistributed plan payments should be paid to creditors under the plan was grounded in either the second sentence of §1326(a)(2) or §1326(c), (depending on whether the undistributed play payments were made pre-confirmation or post-confirmation).  The issue was whether **the second sentence** of §1326(a)(2) or §1326(c) trumped §348(f)(1).

By comparison, this case involves an interpretation of the **third sentence** of §1326(a)(2). Also this case raises two (2) issues, neither of which were presented in Michael: (1) Does the third sentence of §1326(a)(2) have any application if a case is converted without a formal denial of confirmation of the debtor's plan; and (2) if so, what is the interplay between the third sentence of §1326(a)(2) and §348(f)(1)?

## 2.

It is settled law that dictum in a decision of the court of appeals is not binding on lower courts (or a subsequent panel of the court of appeals).  See, e.g., Kool, Mann, Coffee & Co. v. Coffey, 300 F.3d 340, 355 (3d Cir. 2002); see also U.S. v. Outram, 445 F. App'x 509, 514 n.6 (3d Cir. 2011) (nonprecedential); National Surety Corp. v. Midland Bank, 551 F.2d 21, 30 (3d Cir. 1977) (in a case involving federal court application of state law, deference to dictum in state court intermediate appellate decision dependent on "the persuasiveness of its reasoning").  As one district court has explained:

Though stare decisis is fundamental to our jurisprudence, and the governing

> power of precedent is absolute, not every rumination of a higher court is to be
> awarded equal weight by a lower court. The doctrine of stare decisis focuses on
> the decision of the court and the rule the decision adopts.  [A] case is important
> only for what it decides: for "the what," not for "the why," and not for "the how."

Coregis Ins. Co. v. Law Offices of Carole F. Kafrisson, 186 F. Supp. 2d 567, 573 (E.D. Pa. 2002)

(quotations and citations omitted).

Nevertheless, dictum in a decision of the court of appeals is entitled to deference and is

not to be disregarded lightly.  See, e.g., Official Committee of Unsecured Creditors of

Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery, 330 F.3d 548, 561 (3d Cir. 2003).  It

"should not be disregarded except for good cause."  Coregis, 186 F. Supp. 2d at 574; see also

Riggs v. Fling Irrigation, Inc., 535 F. Supp. 2d 572, 577 (W.D.N.C. 2008) (lower court should

treat appellate court dictum as either "presumptively correct or at least strongly persuasive").

### 3.

The decision in this case is not inconsistent with the Michael court's dictum.  By citing

the third sentence of §1326(a)(2) as authority for its statement in footnote 7 of its opinion, the

panel majority appeared to state, in dictum, that when the third sentence of §1326(a)(2) applies,

allowed administrative expenses should be deducted before the undistributed plan payments are

returned to the debtor.  In this case, I have held only that the third sentence of §1326(a)(2) is

inapplicable in the absence of an order denying confirmation of the debtor's chapter 13 plan.

A conflict between this decision and Michael arises only if one reads the phrase "pre-

confirmation context" in footnote 7 of Michael as suggesting that the third sentence of

§1326(a)(2) applies to every chapter 13 case that is converted to chapter 7 before a plan is

confirmed, including those cases in which confirmation of the plan was not denied by the court

before the conversion.  From the sparse reference in footnote 7, I see no reason to conclude that

the Michael court considered the issue.  In light of the various textual and policy arguments that

are implicated, see Lewis, 346 B.R. at 106-11, and the fulsome discussion of the other legal

issues in the Michael, I consider it more likely than not that the dictum in footnote 7 (regarding

the relationship between the third sentence of §1326(a)(2) and §348(f)(1)) referred to cases in

which §1326(a)(2) applies without any intention of opining that §1326(a)(2) applies in every case

converted from chapter 13 to chapter 7.

I also observe that the broad statement in footnote 7 (referring unqualifiedly to the "pre-

confirmation context") did not differentiate between undistributed funds held by the chapter 13

trustee that become property of the chapter 7 estate under §348(f)(1) and those that do not.

Consequently, footnote 7 does not discuss the effect, if any, of 11 U.S.C. §726(b).  It is unlikely

that the court meant to suggest, without further explanation, that chapter 13 administrative

expenses may be paid to the possible detriment of the higher priority chapter 7 administrative

expenses.[20]  This is another indication that the broad sweep of the footnote may have exceeded its

intended meaning.

Finally, as discussed earlier, it is not entirely clear that footnote 7 represents the entirety

of the Court of Appeals' thinking on the relationship between §348(f)(1) and §1326(a)(2).  See

---

[20]    Section 726(b) provides that administrative expenses allowed under §503(b) in a chapter
7 case have priority over the chapter 13 administrative expenses.  See In re Toms, 229 B.R. 646, 654 n.7
(Bankr. E.D. Pa. 1999); 6 Collier ¶726.03, at 726-14; see also In re Philadelphia Newspapers, LLC, 433
B.R. 164, 168 n.5 (Bankr. E.D. Pa. 2010) (after conversion, chapter 7 administrative expenses have
priority over chapter 11 administrative expenses).

n.15, supra.

## IV.  CONCLUSION

This case presents interrelated issues of statutory construction and bankruptcy policy.

In an effort to encourage the use of chapter 13 and to avoid penalizing debtors whose chapter 13 cases are unsuccessful and who convert in good faith to chapter 7, §348(f)(1) reduces the scope of the ensuing chapter 7 estate, thereby precluding creditors from accessing the debtor's post-petition assets for satisfaction of their claims.  Section 348(f)(1) is written in unqualified terms[21] and, as demonstrated by the Michael decision, it has a profound impact on post-conversion case administration.  Meanwhile, the third sentence of §1326(a)(2) simultaneously fosters the same policy as §348(f)(1) as well as a competing policy that favors the payment of chapter 13 administrative expenses from the plan payments the chapter 13 debtor has made prior to confirmation of a plan.

For the reasons expressed in this opinion, I have held that the third sentence of §1326(f)(2) does not apply in every chapter 13 case that is converted to chapter 7.  In this case, I have found the third sentence of §1326(a)(2) inapplicable because no order denying confirmation was entered.  As a result, this case does not require that I resolve any tensions that exist between

---

[21]      By comparison, 11 U.S.C. §349(b)(3), which has a similar effect upon dismissal of a chapter 13 case provides that the court may "order otherwise" for "cause."  Under §348, the contours of the bankruptcy estate are determined as of the date of conversion rather than retroactively to the petition date only if the court determines that the conversion of the case was "in bad faith."  Thus, on its face, the Code accords the bankruptcy court more discretion to vary the statutory default treatment of undistributed plan payments when a chapter 13 case is dismissed than upon conversion to chapter 7.

the distinct policy goals that §348(f)(1) and §1326(a)(2) respectively, are designed to promote.[22]

Consequently, I will deny B&C's request that I direct the Chapter 13 Trustee to deduct its

allowable compensation before returning the undistributed plan payments to the Debtor.  Rather,

the fund should be paid to the Debtor pursuant 11 U.S.C. §348(f)(1).  Furthermore, no purpose

would be served by acting on B&C's Application for Compensation at this time because the

Chapter 7 Trustee has filed a no-asset report and therefore, there is no bankruptcy estate from

which B&C can receive a distribution on account of an allowed administrative expense.

Accordingly, I will deny the Application without prejudice.

     An appropriate order follows.


Date:  **June 28, 2013**        _____

                     **ERIC L. FRANK**
                     **CHIEF U.S. BANKRUPTCY JUDGE**

---

[22]     I recognize that the outcome in this case may not be satisfying to the professionals who appear regularly in bankruptcy cases.  The underlying issues are significant and it is understandable that they would like them resolved.  However, as a trial court, not an appellate court, I consider it appropriate, and in the best tradition of the common law, to endeavor to decide only those issues that are necessary to resolve the controversy before the court.  See Peter Margulies, Article: Advising Terrorism: Material Support, Safe Harbors, and Freedom of Speech, 63 Hastings L.J. 455, 497 & n. 243 (2012); see also In re Midway, 428 B.R. 327, 335 (Bankr. D. Del. 2010) ("The concept of judicial restraint compels the Court to decide only those issues necessary to grant effective relief.").  If my narrow interpretation of the third sentence of §1326(a)(2) does not prevail as precedent in this Circuit or if a case is presented in which the third sentence §1326(a)(2) undoubtedly applies, I will decide the issues left open by this decision.